No. 94-4044

Dale F. Petersen,                    *
                                     *
     Plaintiff - Appellant,          *
                                     *
     v.                              *   Appeal from the United States
                                     *   District Court for the
Shirley S. Chater, Commissioner      *   Southern District of Iowa.
of Social Security,                  *
                                     *
     Defendant - Appellee.           *

                                  _____

             Submitted:  September 13, 1995

               Filed:  December 28, 1995
                                  _____

Before LOKEN, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
                                  _____

LOKEN, Circuit Judge.

     Dale F. Petersen applied for disability benefits under Title II of
the Social Security Act, 42 U.S.C. § 423(a)(1), claiming disability since
March 15, 1991.  After an administrative hearing that focused primarily on
medical issues, the Commissioner of Social Security denied the application
on the ground that Petersen is engaged in substantial gainful activity as
a self-employed farm manager.  The district court affirmed, and Petersen
appeals.  We conclude that the administrative record is inadequate to
support this finding and therefore remand.

     Petersen worked twenty-five years as an educational consultant to the
University of Iowa.  In 1991, the only year for which such information
appears in the record, Petersen earned $37,982 from the University,
including sick pay, and his wife earned $32,896 as a

public school teacher.  The Petersens also own a 137-acre farm in Elkader, Iowa, one hundred miles from their home in Iowa City.  From 1974 to 1983, they raised grains, hay, and occasionally livestock on this farm.  From 1984 through 1986, they rented the farm to a tenant.  In 1987, they enrolled the entire farm in the United States Department of Agriculture's ten-year Conservation Reserve Program ("CRP").  In 1991, the Petersens received $11,642 in CRP payments, which USDA describes as "rental payments" in its CRP regulations.  See 7 C.F.R. § 704.16.

The issue here is whether Petersen's activities in managing the rented farm are "substantial gainful activity" that preclude a finding that he is disabled.  The question is not whether Petersen made a profit farming, nor whether he has the physical ability to engage in more vigorous farming activities.  Rather, the Social Security Act requires us to focus on whether Petersen has proved his "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."  42 U.S.C. § 423(d)(1)(A); see generally Callaghan v. Shalala, 992 F.2d 692 (7th Cir. 1993).  The parties have not cited, nor have we found, any case applying the Act to similar facts.

The Commissioner's regulations deal in detail with the broad question of substantial gainful activity.  We begin with the basic definitional regulation, 20 C.F.R. § 404.1572:

> Substantial gainful activity is work activity that is both substantial and gainful:
>
> (a) *Substantial work activity*.  Substantial work activity is work activity that involves doing significant physical or mental activities.  Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.
>
> (b) *Gainful work activity*.  Gainful work activity is work activity that you do for pay or profit.  Work activity is gainful if it is the kind of work usually

done for pay or profit, whether or not a profit is realized.

Though most of Petersen's income prior to March 1991 came from his contract with the University, we are concerned here with his activities as a self-employed farm landlord. A specific regulation governs whether self-employed persons are engaged in substantial gainful activity:

> (a) *If you are a self-employed person. . . .* We consider that you have engaged in substantial gainful activity if --
>
> (1) Your work activity in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood;
>
> (2) Your work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing; or
>
> (3) You render services that are significant to the operation of the business and receive substantial income from the business.

20 C.F.R. § 404.1575(a)(1)-(3). These alternative tests were described in great detail, with illustrative examples, in Social Security Ruling ("SSR") 83-34, reprinted in West's Social Security Reporting Service, Rulings 1983-1991, at 106.

The third test, § 404.1575(a)(3), requires evidence that the self-employed claimant rendered significant services and received substantial income. A farm landlord performs "significant services" if he "materially participates" in the production or the management of the rented farm. 20 C.F.R. §§ 404.1575(b)(2); 404.1082(c). The ALJ found that Petersen engaged in substantial

gainful activity -- the ultimate question -- because he "materially participated in management of his farm operation." That is an inadequate analysis. While the record supports a finding that Petersen "materially participated" in the management of his farm because he performed many of the tasks necessary to fulfill his CRP obligations,[1] the ALJ made no finding that Petersen received "substantial income." Therefore, the ultimate finding that he engaged in substantial gainful activity is unsound.[2]

The ALJ's analytical oversight raises the question whether the record would support the necessary substantial income finding. To answer that question, we turn to the regulation defining "substantial income." This time, we encounter two alternative tests. First, income after 1989 is deemed substantial if it averaged more than $500 per month. See 20 C.F.R. § 404.1575(c)(1), which cross references 20 C.F.R. § 404.1574(b)(2)(vii). Petersen had virtually no farm income in 1991 other than CRP payments. While those payments of $11,642 easily surpassed the $500 per month threshold, § 404.1575(c) expressly excludes from the substantial income equation "any soil bank payments that were included as farm income." As explained in SSR 83-34 § A(2)(b)(1), this exclusion was created for farms which placed only some land in the soil bank conservation program:

> [S]ince these activities are quite limited as compared with
> regular farming operations, soil bank payments will not be
> indicative of the extent of the management function involved in
> the total enterprise.

---

[1]See 7 C.F.R. § 704.12 (1995) (obligations of a CRP participant); Ottken v. Bowen, No. 88-4291-R, 1990 WL 5729, at *8-9 (D. Kan. Jan. 11, 1990) (farm landlord materially participated).

[2]In denying review, the Commissioner's Appeals Council noted that Petersen's "material participation in the operation of the farm . . . would be expected to result in substantial income if performed for an employer." That, too, is not the analysis prescribed in 20 C.F.R. § 404.1575(a)(3).

The soil bank program ended in 1965; CRP was enacted in 1985.[3]  The programs have obvious similarities -- indeed, CRP has been called "Son of Soil Bank."  See 134 Cong. Rec. 17115 (1988).  But we deal with regulations promulgated prior to 1985 that refer only to "soil bank payments."  Whether CRP payments should also be excluded from the substantial income determination, and if so, whether CRP payments are excluded even if the farm had no other income, are questions that must be addressed in the first instance by the agency.  Thus, we may not affirm on this ground.

The Commissioner urges us to affirm under the second alternative test for determining substantial income.  Under that test, income is substantial if

> the livelihood which you get from the business is either comparable to what it was before you became severely impaired or is comparable to that of unimpaired self-employed persons in your community who are in the same or similar business as their means of livelihood.

20 C.F.R. § 404.1575(c)(2).  The Commissioner argues that Petersen's income from the farm is substantial "because it is comparable to that he derived from the farm prior to his alleged onset of disability."  On this record, we disagree.

There is no evidence in the record of the CRP payments Petersen received before March 1991.  The Commissioner urges us to assume that his CRP payments have been constant since 1987.  We decline to make a critical fact assumption on an important issue that the ALJ overlooked.  Moreover, even if Petersen's CRP payments were constant, additional fact questions remain.  Section 404.1575(c)(2) is concerned with the "livelihood which you get from the business" before and after the alleged disability.  The

---

[3]See Pub. L. No. 89-321, § 601, 79 Stat. 1187, 1206 (1965); the Food Security Act of 1985, Pub. L. No. 99-198, § 1231, 99 Stat. 1354, 1509 (1985).

Petersens reported a net farm loss of $1,015 on their federal income tax return in 1991. In other words, the CRP payments, while substantial, only covered their farm expenses; Petersen's after tax income came from his University position. In these circumstances, were the CRP payments Petersen's "livelihood," and was the 137-acre farm his "business"? Particularly given the total absence of relevant case law, these again are questions that should be decided in the first instance by the agency on an adequate fact record.

Alternatively, the Commissioner argues that Petersen's work activity as a farm manager is substantial gainful activity because it is "comparable to that of unimpaired individuals in the community who are in the same or similar businesses as their means of livelihood." 20 C.F.R. § 404.1575(a)(1). However, there is no evidence in the record as to (i) whether there is anyone in the Elkader, Iowa, community whose livelihood consists entirely of CRP payments from a farm of comparable size, and (ii) if there is such an unimpaired person, how his or her activities in managing such a business would compare to Petersen's work activities. The record does contain a letter from the local ASCS Executive Director advising that there are 47,000 acres of Clayton County, Iowa, enrolled in the CRP. But without more findings and analysis, the ALJ's decision cannot be affirmed under § 404.1575(a)(1).[4]

Focusing almost exclusively on Petersen's medical problems, the parties and the ALJ assembled an administrative record that

---

[4]Likewise, the record is inadequate to determine whether Petersen's farm work activity satisfies the remaining self-employment test, found in § 404.1575(a)(2). Under this test, work activity is substantial gainful activity if it is worth more than $500 per month "when compared to the salary that an owner would pay to an employee to do the work you are doing." Given the net farm loss of $1,015 the Petersens reported on their 1991 federal income tax return, it seems doubtful that a third party landowner would have paid Petersen an additional $6,000 to manage that venture. But tax losses are not always what they seem, so this is another fact-intensive question that we leave open on remand.

-6-

does not permit meaningful review of the novel substantial gainful activity issue raised by Petersen's farm activities.  Therefore, we remand to the district court with directions to remand to the Commissioner for further proceedings consistent with this opinion.  See Payton v. Shalala, 25 F.3d 684, 686 (8th Cir. 1994).

    A true copy.

       Attest:

          CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.