Larry J. DOWNES, Plaintiff,

v.

Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.

No. 4:03–CV–90095.

United States District Court,
S.D. Iowa,
Central Division.

Oct. 14, 2003.

Timothy N. Tripp, Pella, IA, for Plaintiff.

Gary L. Hayward, Asst US Atty, Des Moines, IA, for Defendant.

## ORDER

PRATT, District Judge

Plaintiff, Larry J. Downes, filed a Complaint in this Court on February 20, 2003, seeking review of the Commissioner's decision to deny his claim for Social Security benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* This Court may review a final decision by the Commissioner. 42 U.S.C. § 405(g). For the reasons set out herein, the decision of the Commissioner is reversed and remanded for further administrative proceedings.

Plaintiff filed an application for Social Security Disability Benefits on March 13, 1997, claiming to be disabled since February 18, 1996. Tr. at 92. Plaintiff was last insured to receive disability benefits at the end of December, 2001. Tr. at 95. After the applications were denied, initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge. A hearing was held before Administrative Law Judge Thomas M. Donahue (ALJ) on April 9, 1998. Tr. at 19–76. The ALJ issued a Notice Of Decision—Unfavorable on August 10, 1998. Tr. at 9–15. After the decision was affirmed by the Appeals Council on December 27, 2002 (Tr. at 5–7), Plaintiff filed a Complaint in this Court on February 20, 2003.

In this case, the ALJ stopped the sequential evaluation after finding that Plaintiff is engaged in substantial gainful activity. The ALJ found that Plaintiff was still engaging in his work as a farmer, and thus the other steps of the sequential evaluation were not relevant to determining the merits of Plaintiff's application.

At the hearing, Plaintiff testified that when he gets up in the morning—about 6:30—he walks about 200 feet to check on 19 cows. "If they need hay, I've got to get on the tractor and take them a big bale of hay..." Tr. at 24. Plaintiff said that he also oversees an isolation unit where pigs are raised. "... it's about a half mile from home. I'll get in the pickup, I drive over there ... I walk through to make sure that they got water and feed. That there's no sick ones, you know, just analyze them and just take your time and just walk along, and the feed system's all automatic." Tr. 25. To feed the animals, Plaintiff said he turns on an electrical switch and an auger brings feed to each pen. He said that he walks through the building which is a hundred feet long. Tr. at 26. Plaintiff said that in the afternoon, he walks back out to watch his cows. He said the cows were calving now (apparently referring to April 1998) and that he would summon help if any of them were having difficulty. Tr. at 33. He also makes a second trip to walk through the isolation unit. He said that he just makes sure that there are no problems. He said that someone else owns the pigs. Tr. at 34. He also said that another farmer owns the building where the pigs are kept. Plaintiff said that he is paid $800.00 per month when the pigs are in the building. He said that he gets paid only during those months when pigs are present. Even if there are no pigs, however, he still needs to pay the rent on the building and pay the utility bills. Tr. at 38.

Plaintiff told the ALJ that the 19 cows were beef cows. He said that they were kept through the summer and then sold after the calves were weaned. Tr. at 49–50. Plaintiff said that he owns 80 acres of land of which as much as 7 is in corn, and the rest is pasture for the cows. Tr. at 50. Plaintiff said that he did not pay anyone to help him with the cattle.

Plaintiff told the ALJ that he received $7,000.00 from the sale of calves and that he had been paid $2,500.00 for taking care of the hogs. Tr. at 51. Plaintiff said that his neighbor makes hay for him. "I go out and pick the bales up after he gets done—then I can do it at my own leisure time and there's no hurry. I can get a couple of them a day and just carry them up by the barn there and set them in a row with my tractor." Tr. at 52. Plaintiff said that before the onset of his disability in February of 1996, he did all the farm work himself and did not need to ask his neighbors for help. Tr. at 56.

The ALJ asked Plaintiff's wife who makes the decisions regarding how the land is going to be used and when the animals are going to be sold. She responded that it was her husband who made the decisions. Tr. at 65–66. She said that she was not real sure how they were paid for the hogs, that her husband handled the financial part. Tr. at 66.

At the conclusion of the hearing, the ALJ asked Plaintiff's counsel to submit copies of Plaintiff's 1996 and 1997 federal and state income tax reports. Tr. at 74. The 1996 Schedule F, Profit Or Loss From Farming, shows that Plaintiff had gross receipts of $4,661 from the sales of livestock, produce, grains, and other products (line 4). He also reported expenses in the amount of $22,535 (line 35) for a loss of $17,624 (line 36). Tr. at 109. The 1997 Schedule F, shows receipts of $5,038 from sales of livestock etc. (line 4). Total ex-

penses for 1997 were $10,273 (line 35) leaving a loss of $2,385 (line 36). Tr. at 125.

In his decision, the ALJ wrote: "... the undersigned finds that [plaintiffs farm work] is equivalent to substantial gainful activity in that he is performing work activity comparable to the salary that an owner would pay an employee to do the same work. Further, the undersigned finds that the services rendered are significant to the operation of the isolation unit business and that he receives a substantial income from the business." Tr. at 14. The ALJ found that Plaintiff was working as a farmer and was not, therefore, disabled nor entitled to the benefits for which he applied. Tr. at 15.

## DISCUSSION

In *Petersen v. Chater,* 72 F.3d 675, 676–77 (8th Cir.1995), the Court, quoting 20 C.F.R. § 404.1575(a)(1)-(3) noted the three part test for determining if a self employed person is engaged in substantial gainful activity:

(a) *If you are a self-employed person...* We consider that you have engaged in substantial gainful activity if—

(1) Your work activity in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood;

(2) Your work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing; or

(3) You render services that are significant to the operation of the business and receive substantial income from the business.

■ The ALJ found that Plaintiff's work on his farm is substantial gainful activity because "... he is performing work activity comparable to the salary that an owner would pay an employee to do the same work." This is the standard set out in test 2 of the above cited regulation. The Court can find no substantial evidence to support this finding. In *Petersen,* at 677, the Court also cited to Social Security Ruling (SSR) 83–34, which describes the above quoted tests "in great detail, with illustrative examples." In this SSR, section B is entitled "Tests two and three: Comparability of work and worth of work." Section B(b)(2) states:

... To establish comparability of work activity, it is necessary to show that the disabled person is performing at a level comparable to that of unimpaired persons, considering the following factors: hours, skills, energy output, efficiency, duties and responsibilities. The lack of conclusive evidence as to the comparability of the required factors will result in a finding that work performed is not SGA.

... Development must be specific. Each work factor cited above must be described in detail, showing its contribution to the business operation. General descriptions are considered inconclusive evidence for the point-by-point comparison that is required. If only a general description is possible or available, any doubt as to the comparability of the factors should be resolved in favor of the impaired individual.

Evidence of the impaired individual's activities accompanied by a statement that the work is comparable to the work of unimpaired persons is insufficient for a sound decision. If necessary, a description should be obtained through a personal interview with an unimpaired

self-employed individual from the selected group.

There is no evidence in this record which passes muster on the above quoted standard. The finding that Plaintiff meets the second regulatory test of substantial gainful activity, therefore, is not supported by substantial evidence on the record as a whole.

■ The ALJ, went on to consider the third test set out in the regulation. The ALJ wrote: "Further, the undersigned finds that the services rendered are significant to the operation of the isolation unit business and that he receives a substantial income from the business." Tr. at 14. The SSR states: "The services of an individual in a one-person business are necessarily 'significant'. The receipt of substantial income by the operator of a one-person business will result in a finding of SGA." Id. at § A(1)(a). Assuming, therefore, that Plaintiff's services to his farm business, are "significant," it is still necessary to show that he received "substantial income" in order to deny the claim on the basis that he is engaged in substantial gainful activity. The only substantial evidence of Plaintiff's income during the years 1996 and 1997, are the tax returns submitted at the request of the ALJ. These are joint returns filed by Plaintiff and his wife. Again SSR 83–34 provides guidance. The ruling states: "... before applying the Earnings Guidelines, it is necessary to ascertain what portion of the individual's income represents the actual value of the work he or she performed. To do so, the adjudicator must first determine the individual's net income (i.e., gross income less normal business expenses)...." Id. at § A(2)(b)(1). Here, the evidence is that in 1996, Plaintiff's farm realized a loss of $17,624. In 1997, there was a loss of $2,385. In other words, there was no net income in either year. The finding that Plaintiff is per-

forming significant services *and* that he receives substantial income from the business, is not supported by substantial evidence on the record as a whole.

In *Carter v. Sullivan*, 909 F.2d 1201, 1202 (8th Cir.1990), the Court noted that 20 C.F.R. § 422.408 states that Social Security Rulings are binding on all components of the Administration. The Court held that the failure of the Secretary to consider its own ruling constitutes a plain abuse of discretion.

For the foregoing reasons, the Court finds that the ALJ's reasons for stopping the sequential evaluation at the first step are inadequate and that the finding is not supported by substantial evidence on the record as a whole. The Commissioner argued that if the Court finds, as it has, that the ALJ erred by stopping the sequential evaluation at the first step, that the proper remedy is a remand so that the ALJ can evaluate the evidence relevant to the other steps. The Court agrees with the Commissioner that the proper remedy in this case is a remand for further proceedings. On remand, the ALJ shall proceed to step two of the sequential evaluation and determine whether the case should be either approved or denied on the basis of steps two through five of the sequential evaluation.

**CONCLUSION AND DECISION**

The case is hereby remanded to the Commissioner for further administrative proceedings consistent with this opinion. The Clerk will enter judgment accordingly.

The judgment to be entered will trigger the running of the time in which to file an application for attorney's fees under 28 U.S.C. § 2412(d)(1)(B) (Equal Access to Justice Act). *See Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993). *See also, McDannel v. Apfel*, 78 F.Supp.2d 944 (S.D.Iowa 1999) (discussing, among other things, the relationship be-

tween the EAJA and fees under 42 U.S.C. § 406 B), and LR 54.2(b).

IT IS SO ORDERED.