BEAM, Circuit Judge.
The Tax Court determined that payments received by Rollin and Maureen Morehouse under the United States Department of Agriculture’s Conservation Reserve Program (CRP), 16 U.S.C. §§ 3801, 3831-35, constituted income from self-employment for purposes of 26 U.S.C. § 1401. We reverse.
I. BACKGROUND
Morehouse[1] holds a bachelor’s degree in business from the University of Minnesota. *618 Following graduation he worked as a regional sales manager and as an associate publisher. From 1987 through 2003, Morehouse provided marketing and fund-raising services for the University of Texas at Austin. In 2003, he moved his family to Minnesota and became the primary caretaker for his four sons.
In 1994, Morehouse inherited 503 acres of land in Grant County, South Dakota (Grant County Property), 320 acres in Roberts County, South Dakota (Roberts County Property), and 400 acres in Day County, South Dakota (Day County Property). All of the land was tillable cropland, with the exception of a gravel pit on the Grant County Property and 129 acres of the Roberts County Property, which Morehouse’s father had placed in the CRP program. Morehouse never farmed any of the land, but instead rented portions of the properties to individuals who farmed their rented portions.
In 1997, Morehouse enrolled the tillable land on the Grant County Property and the remaining 191 acres of the Roberts County Property (collectively the “CRP Properties”) in the CRP.[2] The Commodity Credit Corporation (CCC) executed the CRP contracts with respect to the CRP Properties. These contracts expressly forbade Morehouse from, among other things, producing agricultural commodities on the CRP Properties or undertaking “any action on the land ... which tends to defeat the purposes of this CRP contract, as determined by the CCC.”
The CRP contracts also required More-house to implement conservation plans for the CRP Properties. These plans generally required Morehouse to establish and maintain specific types of grass and legume or perennial vegetative cover on portions of the CRP Properties and periodically engage in weed and pest control.[3] Morehouse was also required to fulfill certain annual paperwork obligations and he visited the CRP Properties approximately three times each year to ensure the properties complied with the CRP contracts. In return for Morehouse’s compliance with the CRP contracts, the CCC agreed to pay part of his costs for implementing the conservation plans, along with an “annual rental payment.”
Morehouse received CRP payments of $37,872 in both 2006 and 2007. The More-houses timely filed tax return forms for both years and identified their occupations as “self-employed.” On Schedules E of their tax returns, the Morehouses listed the CRP payments for both years as “rents received,” and thus the CRP pay *619 ments were not taxed as self-employment income. On October 14, 2010, the Internal Revenue Service Commissioner (Commissioner) mailed to the Morehouses a notice of deficiency for 2006 and 2007. The notice stated the CRP payments should have been reported as income on a Schedule F, Profit or Loss From Farming, and were thus unreported self-employment income, which should have been taxed.
The Morehouses petitioned the Tax Court for review of the Commissioner’s determination that the CRP payments were taxable as income from self-employment. The Tax Court ultimately sustained the Commissioner’s determination. In reaching this decision, the Tax Court first concluded Morehouse was “engaged in the business of participating in the CRP ... with the primary intent of making a profit” and that there was a sufficient nexus between this business and the CRP payments, thus categorizing the payments as net earnings from self-employment.[4] 26 U.S.C. § 1402(a). The Tax Court also rejected the assertion that CRP payments were rentals from real estate under 26 U.S.C. § 1402(a)(1) and should thus be excluded from Morehouse’s net earnings from self-employment. The Tax Court instead concluded CRP payments were proceeds from Morehouse’s own use of his land and thus did not constitute rent. Morehouse appeals.
II. DISCUSSION
An order of the Tax Court “is subject to the same review ... as a similar order of a district court.” 26 U.S.C. § '7482(a)(3). The Tax Court’s “conclusions of law are reviewed de novo and findings of fact are upheld unless clearly erroneous.” Estate of Korby v. Comm’r, 471 F.3d 848, 852 (8th Cir.2006). The question of whether CRP payments are “net earnings from self-employment” within the meaning of 26 U.S.C. § 1402(a) is a mixed question of law and fact that we review de novo. Milligan v. Comm’r, 38 F.3d 1094, 1097 (9th Cir.1994).
Section 1402 of the Internal Revenue Code, which imposes a tax on the “self-employment income of every individual,” was designed to provide social security benefits to self-employed persons. See Bot v. Comm’r, 353 F.3d 595, 596 (8th Cir.2003). We have previously recognized that self-employment tax provisions “are broadly construed to favor treatment of income as earnings from self-employment.” Id. at 599.
“[Sjelf-employment income means the net earnings from self-employment derived by an individual.” 26 U.S.C. *620 § 1402(b). i “[N]et earnings from self-employment means the gross income derived by an individual from any trade or business carried on by such individual.” Id. § 1402(a) (internal quotation omitted). The “derived from” requirement “necessitates a nexus between the income and the trade or business actually carried on by the taxpayer. That is, the trade or business activity must give rise to the income.” Bot, 353 F.3d at 599. Section 1402(a)(1) excludes from the definition of “net earnings from self-employment” several types of income, including “rentals from real estate” and CRP payments made to “individuals receiving benefits under section 202 or 223 of the Social Security Act.” Thus, this statutory language sheds little, if any, light on whether a particular CRP contract payment, especially one made to a non-farmer, constitutes “net earnings from self employment.”
The CRP is the current version of a long line of federal soil conservation programs, and is so substantially similar to its predecessor, the Soil Bank Act, 7 U.S.C. §§ 1801-1837 (repealed 1965), that we have referred to it as the “Son of Soil Bank.” Petersen v. Chater, 72 F.3d 675, 677 (8th Cir.1995).
In Revenue Ruling 60-32, 1960-1 C.B. 23 (1960), the IRS concluded that soil bank payments made to persons who did not operate or materially participate in a farming operation were “not to be included in determining net earnings from self-employment.” Soil bank payments to farmers, however, were to be treated as self-employment income derived from their farming business. Id. Although Revenue Ruling 60-32 did not explain why the IRS differentiated between farmers and non-farmers, a subsequent revenue ruling indicated the IRS viewed soil bank payments to non-farmers as rental income. Rev. Rui. 65-149,1965-1 C.B. 434 (1965).
Although not binding on this court, “when a Revenue Ruling reflects a longstanding and reasonable interpretation of the agency’s regulations, the Ruling attracts substantial judicial deference.” David E. Watson, P.C. v. United States, 668 F.3d 1008, 1017 n. 6 (8th Cir.2012) (internal quotation omitted). Given the significant overlap between the CRP and the soil bank program “and because the judgment expressed in Revenue Ruling 60-32 is not an unreasonable” one, we find Revenue Ruling 60-32 persuasive. Wuebker v. Commissioner, 205 F.3d 897, 903 (6th Cir.2000). We thus hold that CRP payments made to non-farmers constitute rentals from real estate for purposes of § 1402(a)(1) and are excluded from the self-employment tax. See Rev. Rui. 65-149 (reaching same conclusion with respect to soil bank payments).
We reject as erroneous the Commissioner’s attacks on Revenue Ruling 60-32 based on Wuebker and IRS Notice 2006-108, 2006-2 C.B. 1118 (2006). The taxpayers in Wuebker were active farmers who claimed their CRP payments constituted rentals from real estate. 205 F.3d at 902. The Tax Court found in favor of the taxpayers, but the Sixth Circuit reversed. Id. at 904-05. Noting it was a close question, the Wuebker court- concluded that CRP payments to farmers did not fall within the “ordinary or natural” meaning of the phrase “rentals from real estate.” Id. at 903-904.[5]
Although not abundantly clear, the Wuebker court’s determination seemed to rest on its conclusion that, because the *621 taxpayers’ maintenance obligations under their CRP contracts were intrinsically similar to activities performed in their active farming operation — “tilling, seeding, fertilizing, and weed control” — these obligations did not rise to the level of “occupancy or use” by the government. Id. The court further presumed the IRS took a similar position in Revenue Ruling 60-32 when it concluded soil bank payments to active farmers constituted self-employment income under § 1401. Id. at 905. However, the court neither recognized nor rejected the IRS’s position in Revenue Ruling 60-32 that similar payments to non-farmers were not self-employment income.
In 2006, the IRS submitted for comment a proposed revenue ruling that would have dramatically expanded Wuebker’s reach. See Notice 2006-108. With little analysis, the proposed revenue ruling concluded CRP payments to non-farmers were not rentals from real estate and should be treated as income from self-employment. Notice 2006-108 further stated that, if adopted, the proposed revenue ruling would render obsolete Revenue Ruling 60-32. The IRS has not formally adopted the proposed revenue ruling, perhaps because the Commissioner has come to understand Wuebker’s reasoning concerning this particular issue, especially when applied to non-farmers, is problematic. Neither does the proposal represent the agency’s longstanding treatment of land conservation payments made to non-farmers. See Rev. Rui. 60-32; Rev. Rul. 65-149. We thus afford it no deference. See United States v. Cleveland Indians Baseball Co., 532 U.S. 200, 220, 121 S.Ct. 1433, 149 L.Ed.2d 401 (2001).
' In arriving at our conclusion, we embrace the agency’s longstanding position that land conservation payments made to non-farmers constitute rentals from real estate and are excluded from the self-employment tax. See Rev. Rui. 60-32; Rev. Rui. 65-149. While CRP contracts may require farmers to conduct a small subset of activities similar to those used in a portion of their general farming operations, Wuebker, 205 F.3d at 903, the same cannot be said for non-farmers. The only reason they even indirectly engage in or arrange for any “tilling, seeding, fertilizing, and weed control” activities on their CRP land is because the agreement with the government requires them to do so. Id.
In addition, CRP contracts often reserve for the government a right of entry to inspect the CRP lands. As an example, the Wuebker contract states:
Representatives of CCC shall have the right of access to [the] land subject to this contract and to examine any other lands or records under the participant’s control for the purpose of determining land classification and erosion rates and for the purpose of determining whether there is compliance with the terms and conditions of this contract.
205 F.3d at 900 (alteration in original).
From the record it appears that similar rights and responsibilities were incorporated into the Morehouse agreement. Indeed, the record discloses that the government, whether by contractual right or otherwise, physically inspected the CRP properties nearly as often as Morehouse did. These entries, coupled with the significant “tilling, seeding, fertilizing, and weed control” work required by the CRP contracts[6] reveal the government likely *622 had more physical possession for its own land conservation “uses” than Morehouse did.[7] Accordingly, we hold the 2006 and 2007 CRP payments were “consideration paid [by the government] for use [and occupancy] of [Morehouse s] property and thus constituted rentals from real estate , fully within the meaning of § 1402(a)(1). Id. at 904 [8] .
III. CONCLUSION
For the reasons set forth above, we reverse and remand to the Tax Court with instructions to enter judgment in favor of the Morehouses.

. The Morehouses filed joint tax returns for 2006 and 2007 and were thus both liable for *618 their alleged deficiencies in those years. However, only Rollin Morehouse’s conduct is at issue and any references to “Morehouse” refer solely to him.

. The CRP was established pursuant to the Food Security Act of 1985. See Food Security Act of 1985, Pub.L. Ño. 99-198, §§ 1201-1236, 99 Stat. 1354, 1504-1514 (codified as amended at 16 U.S.C. §§ 3831-3835). The primary purpose of the CRP is to reduce soil erosion and improve soil conditions on highly erodible cropland. See 16 U.S.C. § 3801(a).

. The dissenting opinion seems to indicate that Morehouse’s compliance with the CRP contracts amounted to a full-scale farming operation, complete with hired hand. The record, however, indicates that Morehouse hired Wallace Redlin, who had previously cash rented portions of the CRP Properties, to perform the tilling, seeding, and mowing services required by the government in 1998 and 2000, and that the government paid for a significant portion of the materials used in these activities. However, there is no evidence that Redlin performed any activity on the land in either 2006 or 2007 — the only two tax years at issue. Rather, Morehouse’s activities in 2006 and 2007 with respect to CRP contracts were limited solely to driving around the CRP properties a few times each year to ensure they complied with the contracts.

. The dissent seemingly argues that we should conclude that Morehouse was in the trade or business of farming because in order to qualify for CRP payments he had to certify that he was an eligible person actively engaged in farming operations on eligible land. This argument, however, runs directly contrary to the Tax Court's longstanding position that a determination by the USDA that an individual was actively engaged in farming “is not a determination for Federal income tax purposes that [Morehouse was] actively engaged in a trade or business.” Hasbrouck v. Comm’r, T.C.M. 1998-249, 1998 WL 373337, at *12 (1998), aff'd without published opinion, 189 F.3d 473 (9th Cir. 1999). Here, the Tax Court summarily (and quite properly) rejected the Commissioner's novel argument that Morehouse was actually engaged in the trade or business of conducting an environmentally friendly farming operation. The record indicates that Morehouse never personally farmed the CRP Properties and that he tilled and fertilized the land so that he could establish grass covering of which he could make no economic use. We suspect, respectfully, that the Commissioner’s characterization of More-house’s activities as even remotely resembling. a "farming operation” would be met with a fair modicum of skepticism by anyone who has carried on (or closely observed) such an enterprise.

. The Wuebker court defined “rent” as " '[c]onsideration paid ... for the use or occupancy of property.’ ” 205 F.3d at 904 (alterations in original) (quoting Black’s Law Dictionary 1299 (7th ed.l999)).

. The dissent correctly identifies that the CRP contracts obligated Morehouse to develop and maintain certain grass coverings on the CRP Properties and to comply with certain weed control standards. The dissent fails, however, to note that at trial, counsel for the IRS *622 represented that if Morehouse did not fulfill these requirements, the USDA could arrange for any needed work to be completed "on his behalf” and could charge Morehouse a per acre fee for the work. Although the record is somewhat murky regarding what authority the USDA actually had to enter and use the CRP Properties, this representation nonetheless suggests that, rather than merely compensating Morehouse for his own use of the properties, the CRP contracts actually entitled the USDA to make certain uses of the properties, whether through Morehouse's actions or its own.

. The Commissioner singularly focuses on the benefits Morehouse received from the CRP contracts while ignoring the broad public purposes served by the CRP and its predecessor conservation programs. The CRP is a mechanism by which Congress prevents harmful soil erosion, improves air and water quality, provides habitat for animal and plant populations of significant ecological value, and protects "the agricultural production capability for future generations.” 16 U.S.C. § 3831. Congress has charged the Secretary of Agriculture to carry out these public purposes via CRP contracts that compensate private landowners for devoting their land to these purposes. Id. The Secretary is also required to jointly "share the cost of carrying out the conservation measures and practices” on the land. Id. § 3833(a)(1). Congress has charged the Secretary with ensuring that vast portions of highly erodible cropland are removed from production and transformed into conservation reserves. That private landowners participate in this process does not change the fact that the government is using their land for its own purposes.

. We note in passing that Morehouse's CRP contracts bear a striking resemblance to land conservation easements. A "land conservation easement” is "[a]n easement arising from an agreement between a land-owner and a land trust to provide for the protection of the land in its natural state while perhaps also allowing the property to be used for agricultural or low-impact recreational activities.” Black's Law Dictionary 623 (10th ed.2014). Here, it appears the CRP contracts may have functioned in practice as ten-year long “land conversation easements” with the government functioning as the trustee in enforcement of the contract obligations.