152 T.C. No. 15


UNITED STATES TAX COURT


MARY K. FEIGH AND EDWARD M. FEIGH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 20163-17.                    Filed May 15, 2019.


        P-W received a Medicaid waiver payment pursuant to a State
Medicaid waiver program for the care of Ps' disabled adult children.
Pursuant to Notice 2014-7, 2014-4 I.R.B. 445, which classifies such
payments as difficulty of care foster care payments not includible in
gross income under I.R.C. sec. 131, Ps excluded the payment from
gross income. Ps also claimed an earned income tax credit and the
refundable portion of a child tax credit. As relevant here, the credits
are calculated with respect to "earned income" as defined in I.R.C.
sec. 32. R argues that P-W's Medicaid waiver payment does not
qualify as "earned income" because it was excluded from gross
income pursuant to Notice 2014-7, <u>supra</u>. Ps counter that a notice
cannot reclassify otherwise "earned income" as unearned to remove a
benefit provided by Congress through the I.R.C.

        <u>Held</u>: P-W's Medicaid waiver payment does not fall under the
plain text of I.R.C. sec. 131.

Held, further, Notice 2014-7, supra, cannot reclassify P-W's Medicaid waiver payment to remove a statutory tax benefit.

Caleb B. Smith, for petitioners.

John Schmittdiel and Timothy M. Peel, for respondent.

OPINION

GOEKE, Judge:  Respondent issued a notice of deficiency on June 26, 2017, determining an income tax deficiency of $3,972 for petitioners' 2015 tax year.  Petitioners timely filed a petition with this Court to challenge respondent's determinations as set forth in his notice of deficiency.

Background

This matter was submitted fully stipulated by the parties pursuant to Rule 122.[1]  At the time the petition was filed, petitioners resided in Minnesota.

Petitioners timely filed a Form 1040, U.S. Individual Income Tax Return, for the 2015 tax year.  Petitioner Mary K. Feigh was issued a Form W-2, Wage and Tax Statement, from "MAINSL SERVICES MN" which reflected $7,353 in

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) as amended and in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

wages, tips, and other compensation. This amount qualifies as a Medicaid waiver payment for the care of petitioners' related disabled adult children during the 2015 tax year, and petitioners reported this payment on their 2015 tax return.[2] Petitioners had no other Form W-2 income for 2015 and reported no other such income on their 2015 tax return.

The parties have stipulated that Medicaid waiver payments are treated as difficulty of care payments pursuant to Internal Revenue Service (IRS) Notice 2014-7, 2014-4 I.R.B. 445, and that they are excludable from gross income under section 131, which excludes certain foster care payments from the gross income of a foster care provider.[3] Although petitioners reported their Medicaid waiver payment as wages on their 2015 tax return, they excluded the payment from their calculation of gross income for 2015 pursuant to the instructions included with Form 1040.

For 2015 petitioners claimed an earned income tax credit (EITC) of $3,319 and an additional child tax credit (ACTC) of $653, which represented the

---

[2]As used in this Opinion, a Medicaid waiver payment is a payment received by an individual care provider as part of a State's Medicaid Home and Community-Based Services Waiver Program under sec. 1915(c) of the Social Security Act, 42 U.S.C. sec. 1396n(c) (2012).

[3]We are not bound by the parties' stipulation as to matters of law. Greene v. Commissioner, 85 T.C. 1024, 1026 n.3 (1985).

refundable portion of petitioners' child tax credit. As set forth in his notice of deficiency, respondent disallowed petitioners' claimed EITC and ACTC. To qualify for an EITC or an ACTC petitioners must demonstrate that they had "earned income" for 2015 as that term is defined in section 32(c)(2)(A). Respondent argues that petitioners' Medicaid waiver payment was properly excluded from gross income and does not qualify as "earned income" for the purpose of determining EITC and ACTC eligibility. Therefore, respondent argues, petitioners are not entitled to an EITC or an ACTC for 2015.

The sole issue for our consideration is whether Medicaid waiver payments, which are treated as difficulty of care payments that are excludable from gross income pursuant to Notice 2014-7, supra, nevertheless qualify as "earned income" for determining eligibility to receive an EITC or an ACTC.

## Discussion

This case involves a novel question: whether income that a taxpayer has excluded from gross income pursuant to Notice 2014-7, supra, is considered earned income for the purposes of calculating EITC and ACTC eligibility.

As a general rule, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer has the burden of proving that they are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Credits are matters of legislative grace, and a taxpayer bears the burden of proving he is entitled to the credits claimed. <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992); <u>Segel v. Commissioner</u>, 89 T.C. 816, 842 (1987).

Section 32(a)(1) allows an income tax credit for eligible individuals which is computed as a percentage of the taxpayer's "earned income". "Earned income" is defined under section 32(c)(2)(A)(i) as "wages, salaries, tips, and other employee compensation, but only if such amounts are <u>includible</u> in gross income for the taxable year". (Emphasis added.) Section 24(a) allows a credit against tax with respect to each qualifying child of the taxpayer for which the taxpayer is allowed a dependency exemption deduction under section 151. As relevant here-- where petitioners had no tax liability imposed--section 24(d) allows for a refundable portion of this child tax credit based in part on the taxpayer's earned income as defined under section 32.

For 2015 petitioners reported Form W-2 income that the parties stipulate qualifies as a Medicaid waiver payment. The parties agree that petitioners' other forms of income reported on their 2015 tax return do not qualify as "earned income" under section 32. Thus, to qualify for the credits at issue, petitioners must establish that the income they received as a Medicaid waiver payment qualifies as section 32 "earned income".

On January 3, 2014, the IRS announced its position in Notice 2014-7, 2014-4 I.R.B. at 446, that certain qualified Medicaid waiver payments such as the one petitioners received in 2015 will be treated as difficulty of care payments that are excludable from gross income under section 131, "and this treatment will apply whether the care provider is related or unrelated to the eligible individual." Respondent believes that because these payments are now excludable from gross income under section 131 by virtue of Notice 2014-7, supra, they are not "includible" in gross income and, therefore, fail to meet the statutory definition of "earned income" in section 32. Petitioners counter that there is no statutory, regulatory, or judicial authority that classifies Medicaid waiver payments as not includible in gross income under section 131; rather, the sole authority for this classification is Notice 2014-7, supra. Petitioners' argument is that the IRS cannot, through a subregulatory notice, reclassify their otherwise "earned income" as unearned for purposes of determining tax credit eligibility. We must decide what deference, if any, we owe to the interpretation of the Code advanced by Notice 2014-7, supra.

Section 131(a) provides: "Gross income shall not include amounts received by a foster care provider during the taxable year as qualified foster care payments." Section 131(b) further defines a qualified foster care payment in

relevant part as a payment which is "made pursuant to a foster care program of a State or political subdivision" and which is "a difficulty of care payment."

In Notice 2014-7, 2014-4 I.R.B. at 446, the IRS announced the following guidance:

> To achieve consistent federal tax treatment of Medicaid waiver payments * * * as of January 3, 2014, the Service will treat qualified Medicaid waiver payments as difficulty of care payments under § 131(c) that are excludable under § 131, and this treatment will apply whether the care provider is related or unrelated to the eligible individual. * * *

In announcing this guidance the IRS explained that it would no longer apply Program Manager Technical Advice 2010-007, which concluded that "a biological parent of a disabled child may not exclude payments under § 131 because the ordinary meaning of foster care excludes care by a biological parent." Notice 2014-7, 2014-4 I.R.B. at 445. They also announced that they would no longer apply our prior holdings that suggested "that a caregiver of a biological relative receiving qualified Medicaid waiver payments may not qualify as a foster care provider under § 131."[4] Id. at 446. Notice 2014-7, supra, concludes that

---

[4]The IRS announced it would no longer apply our holdings from Bannon v. Commissioner, 99 T.C. 59 (1992), Alexander v. Commissioner, T.C. Summary Opinion 2011-48, or Harper v. Commissioner, T.C. Summary Opinion 2011-56. In Bannon, we did not address sec. 131 but held that payments received by a taxpayer for providing nonmedical care to her disabled adult daughter were not

(continued...)

"treatment of qualified Medicaid waiver payments as 'difficulty of care payments' is consistent with the definition under § 131(c)." However, these payments clearly do not meet the plain statutory definition found in the Code.

Section 131(c)(1)(A) defines "difficulty of care payments" as, inter alia, "compensation for providing the additional care of a qualified foster individual". A "qualified foster individual" is "any individual who is living in a foster family home" and who was placed there by an agency of the State or a qualified foster care placement agency. Sec. 131(b)(2). While "[s]ection 131 does not explicitly address whether payments under Medicaid waiver programs are qualified foster care payments", the IRS reasoned that "Medicaid waiver programs and state foster care programs * * * share similar oversight and purposes." Notice 2014-7, 2014-4 I.R.B. at 446. As an initial matter, the plain text of section 131 renders it inapplicable to the care of biological adult children. In fact, in Notice 2014-7, supra, the IRS acknowledged that it has "historically * * * challenged the

---

[4](...continued)
nontaxable welfare benefits. In Alexander, we held that payments under Washington State's Medicaid Personal Care program for the in-home care of the taxpayer's biological parents did not meet the statutory requirements to be considered foster care payments under sec. 131 because the taxpayer's parents were not "placed" in the home and the taxpayers did not operate a "foster family home". In Harper, we again did not address sec. 131 but, citing Bannon, held that payments received by a taxpayer for providing care to her disabled adult son did not qualify as nontaxable welfare benefits.

excludability of payments to individual care providers caring for related individuals in the provider's home", and its own technical advice previously concluded that the ordinary meaning of foster care excludes care by a biological parent. Nevertheless, Notice 2014-7, supra, concluded that qualified Medicaid waiver payments would be treated as difficulty of care payments "whether the care provider is related or unrelated to the eligible individual."

Additionally, a plain reading of the section 131 requirement that the care recipient be "placed" in a "foster family home" renders it inapplicable here where petitioners are caring for their related adult children in their own home.[5] See sec. 131(b) and (c). While "placed" is not defined under section 131, Notice 2014-7, supra, concludes that "an eligible individual receiving care in the home of the individual care provider under the Medicaid waiver program will be treated as 'placed' * * * for purposes of § 131." However, it provides no compelling rationale for this conclusion when the "qualified foster individual" remains in his

---

[5]Although we are not bound by State law, Minnesota State law defines "foster care" as "24 hour substitute care for children placed away from their parents". Minn. Stat. Ann. sec. 260C.007 subdiv. 18 (West 2015). In addition, for a child to remain in foster care past his 18th birthday the child must not be able to "safely return home". Minn. Stat. Ann. sec. 260C.451 subdiv. 3(1) (West 2015). Citing the definition of "foster care", the Minnesota Court of Appeals has concluded: "Because appellant [father] was living with his mother, she was not able to provide foster care for his children." In re Welfare of Children of T.N., No. A12-1099, 2012 WL 5896895, at *7 (Minn. Ct. App. Nov. 26, 2012).

own home. Instead, Notice 2014-7, supra, cites our decision in Micorescu v. Commissioner, T.C. Memo. 1998-398, 1998 WL 779705, to support its conclusion.

In Micorescu v. Commissioner, 1998 WL 779705, at *5, we looked to the plain meaning of the verb "to place" in order to determine whether qualified foster individuals were placed in their foster family homes by the State or by a third-party organization; however, there was no dispute that the individuals had been placed. In reaching our holding that the third-party organization had placed the individuals we explained that they did such things as "assist in locating adult foster homes, provide transportation to view the homes, provide advice as to which home might be best for the individual, and negotiate with the foster home a price to be paid for the care of the individual." Id. Notice-2014-7, supra, suggests that "States perform similar activities with respect to individuals participating in Medicaid waiver programs." However, none of these things can reasonably be said to have been done in this case, where the individuals receiving care remained in their own home. Petitioners' Medicaid waiver payment does not fall under the plain text of section 131; thus, we must examine the ability of Notice 2014-7, supra, to classify the income as such.

Central to this dispute is what is meant in section 32 by the phrase "includible in gross income". This Court has previously opined on the meaning of "includible" versus "included," and we have held that these words are not functionally the same. See Venture Funding, Ltd. v. Commissioner, 110 T.C. 236, 240-242 (1998), aff'd without published opinion, 198 F.3d 248 (6th Cir. 1999); see also Tesco Driveaway Co. v. Commissioner, T.C. Memo. 2001-294, slip op. at 16 (noting that "includible" refers to "the date that the income should have been reported" while "included" means "the date that the recipient reported the income"). While "included" refers to the actual treatment of income, "includible" refers to a required treatment of income, whether or not the income was actually so treated. Venture Funding, Ltd. v. Commissioner, 110 T.C. at 240-241; id. at 250 (Colvin, J., concurring) ("The 'ed' ending refers to something done in fact * * *. The 'ible' (or 'able') ending refers to something legally required[.]"); see also Eichenberger v. ESPN, Inc., 876 F.3d 979, 984 (9th Cir. 2017) ("[T]he suffix 'able' means 'capable of.'"). Thus, an item of income is "includible" in gross income if it is required to be included as income irrespective of whether the item was actually included in the taxpayer's gross income. Because petitioners' Medicaid waiver payment is "includible" in their gross income but for Notice 2014-7, supra, the question for us becomes whether a notice can effectively usurp

Congress' authority in granting tax credits by denying petitioners a credit they would have been entitled to in the absence of the notice.

To resolve this question, we must examine what substantive effect a notice can have where it provides guidance as to the treatment of certain income under the Code. As we have noted, IRS notices--as mere statements of the Commissioner's position--lack the force of law. Phillips Petroleum Co. v. Commissioner, 101 T.C. 78, 99 n.17 (1993), aff'd, 70 F.3d 1282 (10th Cir. 1995). Thus, they can only provide insight into the Commissioner's interpretation of the law; they cannot effect substantive changes in the law. Nevertheless, we must consider whether this IRS notice may be entitled to some deference under the standards outlined in Skidmore v. Swift & Co., 323 U.S. 134 (1944).

We have previously afforded Skidmore deference to a series of revenue rulings reflecting "a 'body of experience and informed judgment' that the IRS has developed over four decades." Webber v. Commissioner, 144 T.C. 324, 358 (2015) (quoting Skidmore, 323 U.S. at 140). Of course, even in that context we acknowledged that "[w]e are not bound by revenue rulings; under Skidmore, the weight we afford them depends upon their persuasiveness and the consistency of the Commissioner's position over time." Webber v. Commissioner, 144 T.C. at 352-353. In the context of Medicaid waiver payments the IRS opted to issue a

notice rather than a revenue ruling; however, even in this form the "agency's interpretation may merit some deference * * * given the 'specialized experience and broader investigations and information' available to the agency". United States v. Mead Corp., 533 U.S. 218, 234 (2001) (quoting Skidmore, 323 U.S. at 139).

To determine what deference, if any, is owed to an IRS notice we must look at "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." Skidmore, 323 U.S. at 140. We have already discounted the thoroughness and persuasiveness of the reasoning in Notice 2014-7, supra, and concluded that petitioners' Medicaid waiver payment does not fit the plain statutory definition of a qualified foster care payment in section 131. Additionally, the notice acknowledges it is a reversal of the IRS' historical practice of challenging the excludability of these payments and thus does not represent "the agency's longstanding treatment" of Medicaid waiver payments. See Morehouse v. Commissioner, 769 F.3d 616, 621 (8th Cir. 2014), rev'g and remanding 140 T.C. 350 (2013). In the light of these factors, we determine that the notice is entitled little, if any, deference.

The IRS cannot remove a statutory benefit provided by Congress.[6]

Commissioner v. Schleier, 515 U.S. 323, 336 n.8 (1995) ("'[I]nterpretive rulings do not have the force and effect of regulations' * * * and they may not be used to overturn the plain language of a statute." (quoting Davis v. United States, 495 U.S. 472, 484 (1990))); Corbalis v. Commissioner, 142 T.C. 46, 54 (2014) ("A procedural pronouncement cannot restrict or revise * * * [a Code section]. * * * The wording and context of the statute * * * control." (Citations omitted.)); see also Mead Corp., 533 U.S. at 228 ("The fair measure of deference to an agency administering its own statute has been understood to vary with circumstances, and courts have looked to the degree of the agency's care, its consistency, formality, and relative expertise, and to the persuasiveness of the agency's position."). That is exactly what respondent seeks to do here.

The EITC and the ACTC are acts of legislative grace provided by Congress. We know the familiar rule that deductions and credits "depend upon legislative grace and are allowed only to the extent authorized by statute." Estate of Guenzel v. Commissioner, 258 F.2d 248, 256 (8th Cir. 1958) (citing Deputy v. Du Pont,

---

[6]Our holding addresses the power of the IRS, through a notice, to deem income otherwise includible as not includible for purposes of calculating a benefit bestowed by Congress. We do not reach the related issue of whether the IRS may properly classify income as not includible through a regulation.

308 U.S. 488, 493 (1940)), aff'g 28 T.C. 59 (1957).  However, the IRS is not free to circumscribe the credits that the legislature has chosen to authorize through statute; that is a power only Congress has.  Therefore, to the extent respondent seeks to use Notice 2014-7, supra, to deprive petitioners of a benefit bestowed by Congress, we hold he may not do so.

Respondent further argues that there is no statutory provision demonstrating congressional intent to allow petitioners a double tax benefit.  Respondent suggests that if Congress intended to provide a double benefit here, it would have done so explicitly as it did in section 32(c)(2)(B)(vi) where it allowed taxpayers to treat as earned income combat service pay excluded from gross income under section 112.  Respondent's argument, however, misses that he, not Congress, has provided petitioners with a double tax benefit.  Petitioners' income cannot be reclassified by respondent, through a notice, to fall outside the plain text of section 32.  If left alone section 32 would allow petitioners the benefits of earned income for their Medicaid waiver payment, but that payment would remain subject to taxation under section 61.  Respondent, however, has decided to disturb this equilibrium by telling taxpayers like petitioners that they need not pay tax on their Medicaid waiver payments.  While respondent's notice may be well intended and we are not critical of the motivation, our role is to apply the statutory provisions as

they present themselves.[7]  Congress, of course, may exercise its prerogative to definitively provide that these payments are earned income but not subject to taxation as it did with combat service pay under section 32(c)(2)(B)(vi).

Our holdings clarify that, where income does not fall within the plain text of a statutory exclusion from gross income, the IRS cannot reclassify that income through a notice so that it no longer qualifies as "earned income" for the purpose of determining tax credits.  We do not reach the question of whether, in the light of our holdings, petitioners should have included their Medicaid waiver payment in gross income.  Respondent did not raise this issue in his notice of deficiency or plead it in this case.  Instead, respondent argued that petitioners were precluded by his notice from including their payment in gross income.[8]  Respondent chose not

_____

[7]We assume respondent's motive for issuing Notice 2014-7, 2014-4 I.R.B. 445, was well intended; but we note that, at least as applied to petitioners, it may actually cause more harm than good.  Applying the notice as they did, to exclude their Medicaid waiver payment from gross income, but include it in calculating earned income, petitioners had no tax liability and received over $4,000 in refundable tax credits.  Even in the absence of respondent's notice, petitioners would have no tax liability and over $2,500 in refundable tax credits.  However, if petitioners had applied the notice as respondent argues they should have--to exclude their Medicaid waiver payment from gross income and from their earned income calculation--they would still have no tax liability, but would miss out on over $2,500 in refundable tax credits.

[8]In his brief respondent argued that the IRS "announced that certain Medicaid waiver payments are within the ambit of the exclusion under I.R.C. §

(continued...)

to argue in the alternative that petitioners' Medicaid waiver payment should be included in gross income, as our Rules allow him to do, and we will not argue it for him. See Rule 31(c). Our job is to consider the issues advanced by the parties, not to craft alternative arguments never raised. Accordingly, we will not address whether petitioners properly excluded their Medicaid waiver payment from gross income.

In reaching our holdings, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered for

petitioners.

---

[8](...continued)
131." Therefore, according to respondent:

The exclusion of qualified Medicaid waiver payments from gross income under I.R.C. § 131 does not depend upon a taxpayer's election * * *. Petitioners' belief that they elected to exclude qualified Medicaid waiver payments from gross income--and that such election simultaneously rendered the payments includible in gross income--is erroneous. There is simply no election available under I.R.C. § 131 or § 32 for Petitioners to make * * *